**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:14-cv-_____-___-___

ANN WARNER,

Plaintiff,

v.

AURORA PUBLIC SCHOOLS,

Defendant.

---

PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL

---

Plaintiff, Ann Warner, by and through her attorney, Ralph Lamar, for this her Complaint, respectfully alleges as follows:

## I.   NATURE OF THE CASE

1.      This employment discrimination and civil rights action is brought against Defendant Aurora Public Schools ("APS"), by Plaintiff Ann Warner for equitable relief and monetary damages to redress the deprivation of civil rights secured to her by Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794 *et seq* and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 2000e *et seq*.

Specifically, she alleges that APS terminated her employment because it was of the erroneous beliefs that her physical impairment was more significant than in reality it was, and/or that she was unable to perform her job duties, and/or because it held the irrational and overblown fear that she would be reinjured through the normal performing of her job duties. Ms. Warner alleges that the defendant's actions caused her mental distress and humiliation, and loss of employment and compensation. She seeks back pay, reinstatement or front pay, compensatory

1

damages, and attorneys' fees and costs of this action.

## II.   JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over the claim under 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States and said claims are brought to recover damages for the deprivation of Ms. Warner's civil rights.

3.     Venue is proper in this judicial District under 28 U.S.C. § 1391(b),(c) and 42 U.S.C. § 2000e-5(f)(3), because defendant APS has offices, conducts business, and can be found in this District, and the causes of action arose and the acts and omissions complained of occurred therein.

## III.   PARTIES

4.     Plaintiff Ann Warner is a citizen of the U.S. currently residing in Centennial, CO and is subject to the jurisdiction of this court.

5.     Defendant APS was the employer who terminated plaintiff's employment.  At all relevant times during plaintiff's employment by APS, it employed more than 14 persons and is therefore subject to the terms of the ADA.  Additionally, during all relevant times it received federal funds and/or the department in which plaintiff worked was a program or activity for which federal funds were received, and therefore APS is subject to the provisions of the Rehab Act and is subject to the jurisdiction of this court under that statute.  APS' offices are located at 1085 Peoria Street in Aurora, CO.  Defendant is therefore subject to the jurisdiction of this court.

## IV.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

6.     Plaintiff timely filed a charge of discrimination with regard to her ADA claim with the Equal Employment Opportunity Commission ("EEOC") on April 23, 2013.  More than 180

days having passed since the filing of the charge with no findings made by the Commission she requested a right to sue letter from the EEOC on August 21, 2014.

## IV.    STATEMENT OF FACTS

7.    Ms. Warner was hired as a Paraeducator by APS in December 2006.

8.    On February 2, 2009 Ms. Warner suffered a work related injury to her right arm, right wrist and elbow, and right shoulder.

9.    That workplace incident was followed by several surgeries with the last one on April 6, 2010.

10.    Following the surgeries plaintiff received physical therapy.

11.    The only time that Ms. Warner missed work was for the surgeries, therapy, or for doctors' appointments.

12.    Initially she worked with her right arm in a sling and then, later, when the sling was taken off, and she was allowed to use her right hand, she was given a splint/brace to wear.

13.    At that time she was released by her physician with physical restrictions but said restrictions did not interfere with the performance of her work duties.

14.    Ms. Warner underwent Functional Capacity Evaluations on December 3, 2010 and January 6, 2011.

15.    Unfortunately, Ms. Warner received a workplace injury to her right shoulder on November 4, 2011.

16.    She was operated upon on January 17, 2012, to repair a torn rotator cuff and to remove bone spurs.

17.    Just as with the previous injury she was given physical restrictions but they did not prevent her from returning to work on Monday November 7, 2011 and working up through

3

her surgery date (other than to miss time for doctor's appointments or therapy).

18.     She returned to work shortly after the surgery in January 2012 with her arm in a sling.  Sometime later she was allowed to take the sling off.

19.     At that time she simply used a splint/brace.

20.     She performed her duties from that day in January until the end of the school year in May, a period of four months.  She had no problems performing her work duties during this time.

21.     On June 25, 2012 Dr. Sanidas issued permanent work restrictions for Ms. Warner. They consisted of "no lifting, pushing, pulling or carrying more than 5 pounds with the right arm."  She was to perform no overhead lifting.  She was to do most of her work with her left arm and was not to lift over 15 pounds to all levels.

22.     On July 12, 2012 Ms. Warner received a call from Myla Shepherd, the APS Human Resources Director.

23.     Ms. Shepherd set up a meeting for July 17.

24.     At the meeting Ms. Shepherd showed Ms. Warner a copy of the job description for her position.  The description contained a statement that said "lift or move up to 50 pounds". The job description did not state that a person had to be able to perform such lifting with one particular hand or both hands.

25.     Additionally, and in spite of the vagueness of the job description, in Ms. Warner's experience, such duties were non-essential because they were rarely, if ever, performed.

26.     Ms. Warner explained that to Ms. Shepherd but she was told that they were essential nonetheless and that it appeared that she could not perform her job.

27.     Ms. Shepherd offered no explanation as to why Ms. Warner had been allowed to

4

work from February of 2009 up through May of 2012 with obvious restrictions on her right hand.

28.     Ms. Warner said that she had performed her job with good evaluations since her injuries.

29.     She was told by Ms. Shepherd that it wasn't about her job performance but it was her arm that was the problem.

30.     Ms. Shepherd then handed Ms. Warner two other job descriptions for clerical positions within the district and pointed out that they had the same type of physical requirements as a paraeducator and said that the District could no longer offer Ms. Warner employment.

31.     Ms. Shepherd offered no reasonable accommodation to Ms. Warner.

32.     On July 23, 2012 Keith Shandalow, Ms. Warner's attorney at the time, wrote to Kathleen Hostetler, Legal Counsel for APS, stating that the district's decision to end Ms. Warner's employment was a violation of the Colorado Anti-Discrimination Act (CADA).

33.     On July 26, 2012, Ms. Hostetler responded to Mr. Shandalow and stated that Ms. Warner had not been terminated and that he and Ms. Warner were wrong.

34.     She stated that Ms. Warner had met with Ms. Shepherd and discussed her employment and her work restrictions and that they had discussed various options.

35.     She then stated that current school district policy dictated three options for a situation where someone could not perform the essential functions of their position but that before consideration of the three options policy required that Ms. Warner meet with the district to discuss and determine whether a reasonable accommodation was available.

36.     Ms. Hostetler provided no guidance as to what that was, for obvious reasons.

37.     Mr. Shandalow responded by letter the very next day noting the absurdity of Ms. Hostetler's demand in light of her admissions.

38.     However, in the spirit of trying to resolve the matter in a positive fashion Mr. Shandalow informed Ms. Warner that the district now had expressed an interest in making an effort to accommodate her and that she should go back and meet with Ms. Shepherd, in spite of the adamant attitude taken by Ms. Shepherd toward the situation in the July 17, 2012 meeting.

39.     On August 1, 2012, Ms. Warner, her husband, and her father-in-law went to the district offices to discuss Ms. Warner's continued employment.  (Mr. Shandalow had an emergency and was unable to attend).

40.     Directly contradicting what she had said to Ms. Warner in the July meeting Ms. Shepherd explained to Ms. Warner that her employment had not been terminated.

41.     Ms. Shepherd went over the job description with Ms. Warner line by line.  Ms. Warner made it clear that she could perform the job duties that were actually required of a pareducator.

42.     Ms. Shepherd stated that Ms. Warner might get hurt again in the future if she had to intervene in an incident with the children.  Mr. Warner said "you can't fire someone just because you are afraid they might get hurt again in the future".

43.     Ms. Shepherd then changed her tune to say that the lifting restrictions Ms. Warner was under would prevent her from performing her duties as a Paraeducator because it would prevent her from protecting the children under her care.

44.     Ms. Warner responded by saying that the children in her school all weighed more than 50 pounds and that physically protecting the children was not one of her specific job responsibilities as set forth in the job description.

45.     Ms. Shepherd kept going back to "in case you did" have to restrain a child.

46.     Ms. Warner also pointed out that in order to restrain a child an employee has to

6

have CPI training, which she did not possess and which was not a requirement of the position of paraeducator.

47.     Ms. Warner brought up her excellent evaluations and Ms. Shepherd said it wasn't that, that it was her arm.

48.     After some more discussion going over the same points Ms. Warner was told she was being placed on administrative leave with pay pending a functional capacity evaluation by a physician and the meeting was concluded.

49.     As expected by Ms. Warner, no reasonable accommodation was discussed or mentioned by Ms. Shepherd at the meeting other than a parroting of the School District's previous position with regard to the situation.

50.     On August 31, 2012, Ms. Warner received her school work assignment from Damon Smith for the school year.  It mentioned nothing about issues with her arm.  Ms. Warner signed it and turned it in to the District Office.

51.     Ms. Warner attended the FCE as conducted by Scott Sullivan on September 4, 2012.  The report was completed on September 7, 2012.

52.     The report was shared with Dr. Sanidas.

53.     He revised his opinion as to Ms. Warner's restrictions.

54.     The new restrictions consisted of "right arm not to lift above shoulder level, can lift to all levels up to 15 pounds, do most work with left arm, no restraining."  (the opinion about "no restraining" was new).

55.     The FCE was provided to APS on or about September 27, 2012.

56.     Given Dr. Sanidas' opinion, which directly touched on APS "Concerns" it is likely that he was consulted about the matter before he even expressed his new opinion.

57.     Ms. Warner was not notified that the District would discuss the FCE with Dr. Sanidas before he issued his opinion and she was not asked to provide permission for APS to speak with her doctor.  This constitutes a HIPAA violation.

58.     This is effort by APS to manipulate the workers' compensation system, showed a lack of good faith on its part.

59.     On October 2, 2012, Ms. Warner met for the last time with Ms. Shepherd.

60.     Also present were Mr. Shandalow, and Dion Arguelles, Director of Employee Relations.

61.     Ms. Shepherd discussed the results of the FCE and at that time Ms. Warner was told that her paid administrative leave was over and that her employment had been terminated.

62.     Once again, no reasonable accommodation was mentioned by the District representative.  Ms. Warner's last day of pay was September 30, 2012.

63.     On October 19, 2012, Ms. Warner receive a letter from Ms. Shepherd stating that APS policy dictates that "Where the employee cannot perform the essential functions of the job with reasonable accommodation or medical evidence establishes that the employee's condition poses a significant risk to the health, safety, or welfare of the employee or others, the school district may take action to suspend and/or terminate the employee, in accordance with applicable law and policies and procedures."

64.     However, Ms. Warner did not receive any termination notice until December 12, 2012, at which time she was informed by Damon Smith that her employment had been terminated by the Board of Education effective November 9, 2012.

65.     Additional evidence highlighting the inflated and irrational fear on APS' part regarding Ms. Warner's ability to function is the fact that Ms. Warner has subsequently secured

employment with the Denver Public School system in the very same capacity as she was employed by APS with its full knowledge and understanding of her physical limitations and with no accommodations.

## COUNT I

## REHAB ACT VIOLATION

66.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 65 as though set forth fully herein.

67.     As a result of her injuries as set forth in this complaint plaintiff has a significant impairment in the major life activities of "lifting", "performing manual tasks", and "working" and is therefore an individual with a disability under the Rehab Act.

68.     Even though she was able to perform her job duties for the Defendant without any accommodation at the time of her termination APS erroneously regarded her as being more limited in her ability to function than she actually was by her injuries.  Based upon Defendant's inaccurate belief about the effect of plaintiff's injuries she is substantially limited in the major life activity of "working".  Therefore, she is also protected under the "regarded as" provisions of the Rehab Act.

69.     Plaintiff was able to perform the essential functions of her job as a Paraeducator either with, or without, a reasonable accommodation, and is therefore a qualified individual with a disability under the Rehab Act.

70.     Defendant APS' decision not to let plaintiff perform her duties as a paraeducator, and its termination of her employment, were done solely as a result of Plaintiff's disability.

71.     Defendant APS' refusal to reasonably accommodate plaintiff constituted a violation of the Rehab Act.

72.     The unlawful actions of defendant in refusing to allow plaintiff to work in her position as a pareducator, constitutes an intentional violation of the Rehab Act.

73.     As a direct result of Defendant's intentional and unlawful actions in violation of the Rehab Act, plaintiff has suffered economic damages, emotional pain and distress, and has sustained a loss of benefits, and interest due thereon.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding lost wages in the form of back pay, including lost fringe benefits;

(b)     Awarding compensatory damages;

(c)     Ordering reinstatement or, in the alternative, issuing an award of front pay;

(d)     Awarding the costs of this action, together with reasonable attorney's fees; and

(e)     granting such other relief as the Court deems necessary and appropriate.

## COUNT II

## ADA VIOLATION

74.     Plaintiff incorporates by reference the allegations set forth in paragraphs 1 through 73 as though set forth fully herein.

75.     As a result of her injuries as set forth in this complaint plaintiff has a significant impairment in the major life activities of "lifting", "performing manual tasks", and "working" and is therefore an individual with a disability under the ADA.

76.     Even though she was able to perform her job duties for the Defendant without any accommodation at the time of her termination APS erroneously regarded her as being more

limited in her ability to function than she actually was by her injuries.  Based upon Defendant's inaccurate belief about the effect of plaintiff's injuries she is substantially limited in the major life activity of "working".  Therefore, she is also protected under the "regarded as" provisions of the ADA.

77.     Plaintiff was able to perform the essential functions of her job as a Paraeducator either with, or without, a reasonable accommodation, and is therefore a qualified individual with a disability under the ADA.

78.     Plaintiff's disability was a motivating factor in Defendant APS' decision not to let plaintiff perform her duties as a paraeducator, and its termination of her employment.

79.     Defendant APS' refusal to reasonably accommodate plaintiff constituted a violation of the ADA.

80.     The unlawful actions of defendant in refusing to allow plaintiff to work in her position as a pareducator, constitutes an intentional violation of the ADA.

81.     As a direct result of Defendant's intentional and unlawful actions in violation of the ADA, plaintiff has suffered economic damages, emotional pain and distress, and has sustained a loss of benefits, and interest due thereon.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in her favor:

(a)     Awarding lost wages in the form of back pay, including lost fringe benefits;

(b)     Awarding compensatory damages;

(c)     Ordering reinstatement or, in the alternative, issuing an award of front pay;

(d)     Awarding the costs of this action, together with reasonable attorney's fees; and

(e)      granting such other relief as the Court deems necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated this 26th day of August, 2014.

                                        Respectfully submitted,

By:      *s/Ralph E. Lamar, Esq.*
           Ralph E. Lamar, IV
           Attorney I.D. No.  44123
           8515 Braun Loop
           Arvada, CO 80005
           (303) 345-3600
           ralphlamar@ymail.com

           Attorney for Plaintiff